UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60744-RUIZ/STRAUSS

WENDY JAYNE KRAMER,

      Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 16][1] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 17].  This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters [DE 4].  I have reviewed both motions, all summary judgment materials, and the record in this case.  For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 16] be **DENIED** and that Defendant's Motion [DE 17] be **GRANTED**.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on June 29, 2016, alleging disability as of March 7, 2016 ("Alleged Onset Date").  Tr. 64, 178-86.  Her claim was denied initially and upon reconsideration.  Tr. 64, 81-92.  Thereafter, Plaintiff appeared with counsel at a hearing before an

---

[1] References herein to page numbers of Plaintiff's Motion are to the ECF-stamped page numbers, not the page numbers at the bottom of pages.

Administrative Law Judge ("ALJ") on November 20, 2018; a medical expert ("ME"), Olin M. Hamrick, Jr., PhD., and a vocational expert ("VE"), Susan Lazarus, testified at the hearing. Tr. 13-34. On May 13, 2019, the ALJ issued his decision, finding that Plaintiff was not "disabled" under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision). Tr. 64-76. On February 11, 2020, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on April 10, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.     PLAINTIFF'S BACKGROUND

Plaintiff was 58 years old on the Alleged Onset Date and was 61 years old at the time of her hearing before the ALJ and on the date the ALJ issued his decision. *See* Tr. 74, 202. She speaks and understands English. Tr. 194. Plaintiff completed 2 years of college and was employed as a clinical research coordinator – the most comparable position in the Dictionary of Occupational Titles ("DOT") is Director of Research – for most or all of the 10 years preceding the Alleged Onset Date. Tr. 31, 74, 196.

## III.    ME'S HEARING TESTIMONY

The ME is a licensed clinical psychologist who reviewed the medical evidence of record. Tr. 22. Plaintiff's counsel stipulated that the ME was qualified to testify as a medical expert. Tr. 22. The ME testified that Plaintiff has issues with depression and anxiety. Tr. 23. However, he testified that her psychiatrist's mental status observations reflected in checklists were consistent with mild depression. Tr. 23. Further, he found other mental status evaluations in the record to be generally unremarkable, opining that they did not indicate any severe psychiatric or mental health conditions. Tr. 25. Overall, he did not see any objective evidence of any functional

limitations greater than moderate.  Tr. 25.  The ME also testified that Plaintiff had been able to travel to Israel, which he viewed as significant in considering her ability to function.  Tr. 24.

Based on his review of the evidence, the ME opined that Plaintiff would be able to perform simple, routine, repetitive tasks, with limitations, including occasional contact with the public and coworkers (but no limitation to contact with supervisors) and a slower, low-stress environment. Tr. 26-27.  The ALJ provided the following synopsis of the ME's testimony, which the ME agreed was accurate:

> Plaintiff can perform simple, routine, competitive, low stress repetitive tasks on a sustained basis over a normal eight hour workday in a stable work environment with no more than simple decision-making requires, occasional close interpersonal interactions with coworkers, occasional interaction with the public, but is unable to perform complex and detailed tasks or to meet fast paced, high production demands.

Tr. 27.

## IV.    VE'S HEARING TESTIMONY AND INTERROGATORY ANSWERS

The VE briefly testified at the hearing before the ALJ and subsequently answered vocational interrogatories propounded by the ALJ.  Tr. 30-32, 266-70.  At the hearing, she testified that Plaintiff's prior work experience had a Specific Vocational Preparation ("SVP") of 7.  Tr. 31, 267.  In interrogatories, the ALJ asked the VE whether a hypothetical individual with Plaintiff's age and background, who can perform at least the full range of medium work, but who has the limitations that the ALJ included in Plaintiff's RFC (which are set forth below), could perform Plaintiff's past work or other unskilled jobs existing in the national economy.  Tr. 268-69.  The VE stated that the individual could not perform Plaintiff's past work but could work as an industrial cleaner, dining room attendant, or order picker, all SVP 2 jobs with a medium exertional level.  Tr. 268-69.  The VE also indicated that no conflict existed between her answers and the occupational information contained in the DOT.  Tr. 269-70.

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

## I.   THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical

findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).  *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the

claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.  The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 404.1569.  Therefore, "[e]xclusive reliance on the

grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted).  *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC.  *Hargis*, 945 F.2d at 1490.  However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## II.  ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision.  Tr. 75.  Preliminarily, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020.  Tr. 66.  Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 66.  Next, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and anxiety.  Tr. 66.  However, the ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 67.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC

> to perform a full range of Medium work as defined in 20 CFR 404.1567(c) except the claimant is limited to performing simple, routine, competitive, low stress, and repetitive tasks on a sustained basis over a normal 8-hour workday. The claimant is limited to jobs performed in a stable work environment with no more than simple decision-making required. She is limited to occasional close interpersonal interactions with coworkers and occasional interaction with the public. She is unable to perform complex and detailed tasks or to meet fast paced high production demands.

Tr. 68.  As part of this assessment, the ALJ noted that he considered all of Plaintiff's symptoms and the extent to which her symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  Tr. 68.  Additionally, the ALJ stated that he considered the opinion evidence.  Tr. 68.

In discussing Plaintiff's RFC, the ALJ noted Plaintiff's claim that she was unable to work on account of her depressive and anxiety disorders.  Tr. 69.  The ALJ also noted that Plaintiff complained of symptoms of crying spells, depressed and anxious mood, low self-esteem, social withdrawal, poor short-term memory, and intrusive thoughts.  Tr. 69.  However, the ALJ concluded, based on his careful consideration of the evidence, that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ."  Tr. 69.  The ALJ specifically found that Plaintiff failed to satisfy her burden of providing evidence to show that she is as limited as alleged.  Tr. 69.  He further stated that Plaintiff's statements regarding intensity, persistence, and limiting effects were inconsistent because the longitudinal objective medical evidence documented improvement in Plaintiff's clinical findings and ability to function with treatment including medication management and therapy.  Tr. 69-70.  Additionally, the ALJ found Plaintiff's ability to travel (both to Israel and domestically) was inconsistent with Plaintiff's alleged

limitations.  Tr. 70.  In formulating Plaintiff's RFC, the ALJ also discussed the testimony of the ME, as well as the other medical evidence and opinion evidence of record.  Tr. 70-73.

After discussing the evidence and making various findings and observations, the ALJ concluded that Plaintiff's RFC "is supported by the totality of the longitudinal objective medical evidence of record, which documents improvement in [Plaintiff's] clinical findings and thus ability to function with treatment (i.e., medication management and therapy)," and the ALJ also provided the following observations in concluding his RFC analysis:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.
>
> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature.
>
> Moreover, although the claimant has received treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.
>
> There is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.
>
> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant has acknowledged that she has traveled both domestically and internationally during the relevant period. Thus, the claimant was able to handle air travel to another state and international travel.

Tr. 73.

After assessing Plaintiff's RFC, the ALJ considered whether Plaintiff had the ability to perform her past relevant work.  Tr. 74.  He concluded that she was unable to do so because her RFC limited her "to unskilled jobs (i.e., simple, routine, repetitive tasks)."  Tr. 74.  Given that Plaintiff could not perform her past relevant work, the ALJ considered Plaintiff's age, education,

work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, existed in the national economy.  Tr. 74-75.  The ALJ noted that Plaintiff was 58 years old on the Alleged Onset Date, which is defined as an individual of advanced age under 20 C.F.R. § 404.1563.  Tr. 74.  He also noted that Plaintiff had at least a high school education and that she is able to communicate in English.  Tr. 74.  The ALJ then relied on the VE's answers to the vocational interrogatories to determine whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  Tr. 75.  As mentioned above, the VE identified the occupations of industrial cleaner, dining room attendant, and order picker.  Tr. 75, 269.  The ALJ found that the VE's answers were consistent with the DOT.  Tr. 75. Accordingly, the ALJ concluded that considering Plaintiff's "age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Tr. 75.  Therefore, the ALJ found that Plaintiff was not disabled.  Tr. 75.

### III.  <u>ANALYSIS OF ISSUES</u>

Plaintiff argues that the ALJ erred at step 5 and in weighing the opinion evidence in the record.  As to step 5, Plaintiff first argues that the VE included the wrong DOT number for the industrial cleaner job and, consequently, that the ALJ erred in relying on the information provided by the VE.  Second, Plaintiff contends that the ALJ erred by failing to resolve an "apparent conflict" between the VE's testimony and the DOT.  As to the opinion evidence, Plaintiff contends that the ALJ erred in discounting two opinions, by failing to state the exact weight assigned to one of those opinions, and by providing great weight to the ME's opinion.  For the reasons discussed herein, beyond a couple minor harmless scrivener's errors that did not affect the ALJ's ultimate determination, the ALJ did not err.

## A.  DOT NUMBER FOR INDUSTRIAL CLEANER

It is undisputed that the VE included the wrong DOT number (the last digit was incorrect) for industrial cleaner, listing 381.687-010 instead of instead of 381.687-018.  The listed DOT number is for central supply worker, which is a semi-skilled job.  Plaintiff correctly notes that a semi-skilled job is outside the purview of her RFC.  However, it is obvious that the VE intended to include the job of industrial cleaner (which she handwrote), not central supply worker.  The VE made sure to include three jobs with an SVP of 2 and a medium exertional level (both of which are also handwritten next to all three jobs).  Tr. 269.  While industrial cleaner belongs in that group, it is undisputed that central supply worker does not.  Clearly, the VE merely made a scrivener's error solely in recording the last digit of the DOT number.[2]

However, Plaintiff also argues (albeit in only a sentence or two) that there is no way to verify whether the number of jobs the VE listed for industrial cleaner is accurate.  While Plaintiff's observation is correct, any error is harmless.  The VE listed three jobs with a total of approximately 188,000 positions in the national economy.  *See* Tr. 75, 269.  Even excluding the 19,000 positions listed for industrial cleaner (which only make up a small portion of the total number), the number of positions is only reduced to 169,000.  Thus, provided that Plaintiff is capable of performing the other two jobs listed (dining room attendant and order picker), the ALJ's determination that Plaintiff "is capable of making a successful adjustment to other work that *exists in significant numbers in the national economy*," Tr. 75 (emphasis added), is supported by substantial evidence

---

[2] *Cf. Davis v. Berryhill*, 743 F. App'x 846, 849-50 (9th Cir. 2018) ("The ALJ's and vocational expert's error in referencing the incorrect DOT number for the counter clerk (photofinishing) position was harmless. This job is included at DOT #249.366-010, one digit different from the number the vocational expert cited. The vocational expert's testimony that the counter clerk position he identified corresponded with a special vocational preparation ("SVP") level of 2 in the DOT, the SVP for DOT #249.366-010, clarifies this is the position to which he was referring.").

(even without the 19,000 positions listed for industrial cleaner).[3]  *See  Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009-10 (11th Cir. 2020) (finding ALJ's step five determination to be supported by substantial evidence where there were 78,000 positions in the national economy between two jobs even after excluding consideration of the positions available for a third job).

### B.  ALLEGED APPARENT CONFLICT

Plaintiff argues that the ALJ erred at Step 5 by failing to identify and resolve an apparent conflict between the VE's testimony and the DOT.  Because I do not find there to be any "apparent conflict," I disagree with Plaintiff.  "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony." *Washington*, 906 F.3d at 1362.  "[T]his duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id.* Instead, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it." *Id.*  "The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id.*

An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Id.* at 1365.  "It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.*  "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy,

---

[3] It is worth noting that the 19,000 number likely does not pertain to the job of industrial cleaner (meaning that the VE probably incorrectly listed the number of jobs available for central supply worker instead).  That is because recent case law indicates that the number of industrial cleaner jobs available in the national economy is actually *much greater than* 19,000.  *See DiMarco v. Saul*, No. 18-14507-CIV, 2020 WL 1692283, at *5 (S.D. Fla. Jan. 13, 2020) (92,600 jobs); *Gonzalez v. Berryhill*, No. 16-24850-CIV, 2018 WL 1470834, at *5 (S.D. Fla. Jan. 23, 2018) (139,800 jobs); *Bianchi v. Berryhill*, No. 16-60574-CIV, 2017 WL 6947800, at *5 (S.D. Fla. July 12, 2017) (139,000 jobs).  Regardless, the ALJ's error is harmless because the other 2 jobs listed (with the correct DOT number) collectively have 169,000 positions in the national economy.

even if, after further investigation, that turns out not to be the case." *Id.* In other words, "apparent" means "seeming real or true, but not necessarily so." *Id.* at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

Here, as the parties note, the jobs that the VE opined Plaintiff could perform (industrial cleaner, dining room attendant, order picker) have a GED reasoning level of 2. "Level 2 reasoning requires the individual to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions' and '[d]eal with problems involving a few concrete variables in or from standardized situations.'" *Lawrence v. Saul*, 941 F.3d 140, 142 (4th Cir. 2019) (quoting DOT, App. C, 1991 WL 688702). However, the ALJ's hypothetical to the VE (like the RFC adopted by the ALJ) limited the hypothetical individual to performing "simple, routine, competitive, low stress, repetitive tasks" and noted the individual "is unable to perform complex and detailed tasks." Plaintiff argues there is an apparent conflict between these limitations and the requirements of reasoning level 2. If she is correct (meaning if an apparent conflict exists), remand would be required because the ALJ did not identify or resolve any such apparent conflict.

While some courts have agreed with the position Plaintiff espouses, other courts have not. As Plaintiff's Motion [DE 16] and Reply [DE 19] reveal, some district courts in this circuit have found (as Plaintiff argues) that there is an apparent conflict between a limitation to "simple, routine, repetitive tasks" and the demands of a level 2 reasoning job. However, as Defendant's Motion [DE 17] reveals, other district courts in this circuit have found otherwise. Nonetheless, the district court decisions cited by the parties generally do not provide particularly persuasive explanations. Instead, they largely rely on other similarly-decided cases in support of their adopted positions. Though, Defendant's argument, and cases Defendant relies on, are largely based on an unpublished, non-binding Eleventh Circuit decision. *See Valdez*, 808 F. App'x 1005.

In *Valdez*, the Eleventh Circuit stated as follows:

> We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three. But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, *see* DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, *see id.* 716.687-030. Valdez has not argued that these jobs are inconsistent with his residual functional capacity, and they are not.

*Id.* at 1109. Thus, the court clearly found that a limitation to simple, routine, and repetitive work[4] is not inconsistent with reasoning level 2. In other words, it found there is no apparent conflict. But the court did not explain why that is so. While I agree with the conclusion, I cannot recommend that this Court *blindly* follow the unexplained conclusion from *Valdez*.

Nevertheless, I recommend that this Court adopt the conclusion reached in *Valdez* based on my own consideration of the issue and because the Fourth Circuit's published decision in *Lawrence* is persuasive. In *Lawrence*, the Fourth Circuit held that there is no apparent conflict between a reasoning level of 2 and an RFC limiting one to simple, routine, repetitive tasks. *See* 941 F.3d at 141-44. It rejected an argument similar to Plaintiff's argument in this case. Specifically, while recognizing that it has found an apparent conflict exists between the "detailed but uninvolved instructions" component of reasoning level 2 jobs and a limitation to jobs involving "short, simple instructions," the Fourth Circuit rejected the argument that a "short, simple instructions" limitation is effectively the same as a "simple, routine, repetitive tasks" limitation. *Id.* at 143. It explained that the key difference was the use of "short," noting, "'[s]hort' is inconsistent with 'detailed' because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include." *Id.* The court further reasoned:

---

[4] Plaintiff notes that *Valdez* uses the word "work" instead of "tasks." However, at least in this context, this is a distinction without a difference.

14

> In contrast, the administrative law judge found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's residual functional capacity (as determined by the administrative law judge) and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [ ] variables."
>
> To begin with, detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." Finally, "routine" and "repetitive" tasks may involve a few variables, just as driving directions may vary if a road is closed.

*Id.* at 143-44 (internal citations omitted).  Additionally, the Fourth Circuit noted that "[i]n finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, [it] join[ed] every other circuit to consider the issue."  *Id.* at 144 n.8 (citations omitted).

A similar example illustrates the point made by the Fourth Circuit in *Lawrence*: a recipe.[5] Like the driving directions example, recipes often include multiple straightforward steps.  While many recipes may be detailed, that does not mean that they require complex tasks.  In fact, extra detail in a recipe or instructions often makes a task simpler.  Moreover, the "uninvolved" component of reasoning level 2 is significant because its use shows that reasoning level 2 jobs are not complex.  In other words, they only require simple tasks.

For the foregoing reasons, there is no apparent conflict between a reasoning level 2 job and a limitation to simple, routine, repetitive tasks.[6]

---

[5] It is worth noting that Plaintiff indicated she is able to follow written instructions, such as a recipe, even though she may need to review the instructions a few times.  Tr. 209.

[6] Plaintiff separately argues that by stating she is limited to "unskilled work," the ALJ implicitly limited her to only being able to understand, carry out, and remember simple instructions (notwithstanding that the ALJ did not include such a limitation in Plaintiff's RFC).  However, Plaintiff does not cite any case law to support this implied-limitation argument.  Notably, as indicated above, the plaintiff in *Lawrence* was similarly limited to "simple, routine repetitive tasks

### C.  MEDICAL OPINIONS

"The ALJ considers many factors when weighing medical evidence, including whether an opinion is well-supported and consistent with the record." *Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1305 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).[7]  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "A treating physician's medical opinion must be given 'substantial or considerable weight' unless 'good cause' is shown to give it less weight." *Hargress*, 883 F.3d at 1305 (citing *Winschel*, 631 F.3d at 1179; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so."  *Id.* (quoting *Winschel*, 631 F.3d at 1179).  "Good cause exists when 'the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Id.* (quoting *Winschel*, 631 F.3d at 1179).

Here, Plaintiff contends that the ALJ improperly discounted the opinions of two treating sources – Debbie Layton-Tholl, Psy.D and Kandace Eagle, ARNP – and improperly assigned great weight to the ME's opinion.  However, she fails to demonstrate reversible error in the ALJ's weight

---

of *unskilled work*," *id.* at 143 (emphasis added), and the Fourth Circuit found the limitation did not conflict with the requirements of a reasoning level 2 job.

[7] 20 C.F.R. § 404.1527 applies to Plaintiff's claim because it was filed before March 27, 2017.

determinations.  As discussed herein, the ALJ clearly provided good cause for discounting the opinions of Dr. Layton-Tholl and Ms. Eagle, and the ALJ did not err by assigning great weight to the ME's opinion.  In her Reply, Plaintiff indicates that she "has done nothing more than ask this Court to abide by the relevant standard of review in this case."  [DE 19] at 9.  However, it is precisely the deferential standard of review that dictates that Defendant prevails on this medical-opinion issue.

### 1.  Debbie Layton-Tholl, Psy.D

The ALJ discussed Dr. Layton-Tholl's treatment notes, records, and opinions at length, Tr. 71-72, and then discounted Dr. Layton-Tholl's opinions, articulating the following:

> The undersigned gives the opinion of Dr. Layton-Tholl (Ex. 1F, 2F, 4F, 5F) because it is inconsistent with the totality of the longitudinal objective medical evidence of record documented during the same period (Ex. 5F, 10F, 12F, 13F, 14F). Dr. Layton-Tholl's opinion is also internally consistent[8] with essentially normal clinical findings documented in Dr. Layton-Tholl's own treatment notes (Ex. 4F at 2-6; Ex. 5F, 8F). Moreover, Dr. Layton-Tholl's opinion that the claimant's GAF rating was 60 (indicative of moderate symptoms and limitations) is internally inconsistent with Dr. Layton-Tholl's opinion that the claimant was 100% disabled.

Tr. 73.  As Plaintiff points out, the first line of the foregoing is evidently missing the specific weight afforded by the ALJ, which should precede the word "because."  While that does not *strictly* satisfy the requirement that an ALJ provide the weight afforded with particularity, this is not a situation where the reviewing court is unable "to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Winschel*, 631 F.3d at 1179.

It is clear that the ALJ substantially discounted Dr. Layton-Tholl's opinions, and it is clear why he did so.  The ALJ's accidental failure to include two words (the amount of weight) – albeit what are generally two very important words – is harmless given the ALJ's detailed discussion

---

[8] The context of this sentence shows that the ALJ intended to state "internally inconsistent," not "internally consistent."

regarding Dr. Layton-Tholl's notes, records, and opinions and the fact that the accidental exclusion of the two words clearly did not affect the ALJ's ultimate determination.  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (holding that any error committed by the ALJ in not identifying the weight assigned to two medical opinions was harmless "because it did not affect the [ALJ's] ultimate determination").  Notably, the Eleventh Circuit, albeit in non-binding opinions, has found similar, but arguably greater, errors (ones that did not involve the mere accidental omission of two words) to be harmless.  *See Hunter*, 609 F. App'x at 557-58; *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (finding ALJ's failure to state weight assigned to potential medical opinions to be harmless where the ALJ's decision reflected that she considered the treatment notes of the medical providers and the ALJ's decision was consistent with the records); *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) ("[W]e find no reversible error. Although the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence."); *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) ("[E]ven if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of Dr. Giron's opinion, this error was harmless because it is still clear that the ALJ's rejection of the portions of Dr. Giron's opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence.").

In addition to trying to capitalize on the ALJ's harmless scrivener's error, Plaintiff argues that the ALJ's decision to discount Dr. Layton-Tholl's opinion is not supported by substantial evidence.  But as Defendant correctly notes, Plaintiff's argument is nothing more than an attempt to convince the Court to improperly reweigh the evidence and substitute its opinion for that of the ALJ.

The ALJ clearly provided good cause for discounting Dr. Layton-Tholl's opinions.  He explained that the opinions were inconsistent with the totality of the objective medical evidence (i.e., the evidence supported a contrary finding) and also inconsistent with Dr. Layton-Tholl's own records.  Both reasons are supported by substantial evidence.  It is particularly significant that, as the ALJ noted, Dr. Layton-Tholl's opinion that Plaintiff had a GAF rating of 60 (indicating only moderate issues) was inconsistent with her opinion that that Plaintiff was 100% disabled.[9]  But that is not the only inconsistency.  Interestingly, Plaintiff notes that Dr. Layton-Tholl opined that Plaintiff had poor concentration, something Dr. Layton-Tholl did in fact indicate.  Tr. 327, 335.  However, above her "poor concentration" notation on June 15, 2016 progress notes, Dr. Layton-Tholl indicated that Plaintiff had "fair" concentration (on the very same page).  Tr. 327.  She similarly noted that Plaintiff had "fair" concentration on several other progress notes.  Tr. 328, 329, 346, 347.  Further, in other progress notes, Dr. Layton-Thall even found that Plaintiff had "good" concentration.  Tr. 331, 342, 348, 349.

Overall, it is clear that the ALJ considered the entirety of the evidence and that he provided good cause, based on substantial evidence, to discount Dr. Layton-Tholl's opinions.  Significantly, this Court is not permitted to "second guess the ALJ about the weight the treating physician's opinion deserves [because] he articulate[d] a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

---

[9] Of course, this latter opinion (100% disabled) is an opinion on an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021) ("A medical source's opinion that a claimant is 'disabled' or 'unable to work' is not dispositive of a disability claim because the determination is reserved to administrative law judge acting on behalf of the Commissioner." (citing § 404.1527(d)(1))).

## 2. Kandace Eagle, ARNP[10]

As with Dr. Layton-Tholl, the ALJ discussed Ms. Eagle's[11] treatment notes, records, and opinions, Tr. 70-71, and then discounted Ms. Eagle's opinions, articulating as follows:

> The undersigned gives Dr. Eagle's opinion (Ex. 11F) little weight because it is internally inconsistent with Dr. Eagle's own treatment notes documenting essentially normal clinical findings contemporaneously on examination (Ex. 10F at 3, 7, 10, 14, 17-18; Ex. 14F at 2, 4) and the claimant's travel to New Jersey and Israel (Ex. 9F).

Tr. 73. Thus, the ALJ clearly provided good cause for discounting Ms. Eagle's opinions as well.

It is unclear from Plaintiff's Motion how it is that she believes the ALJ erred in discounting Ms. Eagle's opinion.[12] Plaintiff begins her discussion regarding Ms. Eagle by insinuating that the ALJ erred in providing little weight to Ms. Eagle's opinion, [DE 16] at 21, but she never explains why that is so. Instead, she launches into a synopsis of her subjective complaints to Ms. Eagle followed by a synopsis of Ms. Eagle's opinion. [DE 16] at 22-24. However, Plaintiff seems to

---

[10] The ALJ likely did not need to treat Ms. Eagle as a treating source or her opinion as a medical opinion. *See Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 & n.3 (11th Cir. 2020) ("[T]he ALJ did not err by failing to state with particularity the weight given to the notes prepared by the ARNPs. The ALJ had no obligation to discuss the ARNPs' notes. While the ALJ must state with particularity the weight given to different medical opinions and the supporting reasons, nurse practitioners and licensed clinical social workers are not 'acceptable medical sources' under the regulations. As 'other sources,' they cannot establish the existence of a medically determinable impairment, produce medical opinions, or be considered treating sources." (internal citations omitted)). Regardless, even if Ms. Eagle's opinion were to qualify as a medical opinion from a treating source, the ALJ did not err for the reasons discussed herein.

[11] In certain locations, the ALJ incorrectly refers to Ms. Eagle as Dr. Eagle. The table of contents for the administrative record [DE 11] indicates that Exhibit 11F is a Treating Source Statement from *Dr.* Kandace Eagle. However, there is nothing in Exhibit 11F indicating that she is a doctor, and all of the other documents in the record from Ms. Eagle reveal that she is an ARNP.

[12] In fact, it appears from Plaintiff's Motion that Plaintiff largely presented Ms. Eagle's opinions for the purpose of arguing that they were consistent with those of Dr. Layton-Tholl (i.e. in service of the argument that the ALJ improperly discounted Dr. Layton-Tholl's opinions as being inconsistent with the longitudinal objective medical evidence).

overlook the fact that the ALJ discounted Ms. Eagle's opinion because he reasonably found it to be inconsistent with her own records based on his review of the record. That is good cause. The ALJ did what was required of him and his decision is supported by substantial evidence. As such, this Court cannot second guess the ALJ in the weighing of Ms. Eagle's opinion. *Hunter*, 808 F.3d at 823.

### 3. ME

After providing a detailed account of the ME's testimony, Tr. 70-71, the ALJ assigned the ME's opinion "great weight because it is well supported by the totality of the longitudinal objective medical record, which the medical expert reviewed because the record documents not more than mild to moderate functional limitations secondary to the claimant's severe mental impairments." Tr. 72 (citing Ex. 5F at 2, 10F, 12F, 13F, 14F)). In fact, when testifying, the ME referred to all of the medical record exhibits (Exhibits 1F through 14F, excluding 6F). *See* Tr. 23-25.

Plaintiff, however, argues that the ALJ improperly provided "great weight" to the ME's opinion, noting that the ALJ provided more weight to his opinion than the other opinion evidence. She contends that the ME's opinion is less consistent with the record than the other opinion evidence. In making this argument, Plaintiff initially (in a very lengthy paragraph) provides a synopsis of the ME's testimony. Then (in a much shorter paragraph), she quickly raises a handful of arguments in passing.

First, Plaintiff argues that the ME "never sought clarification on any level from Kramer regarding the statements from her doctors about traveling that he believed showed greater functional capacity than she was alleging." [DE 16] at 26. However, Plaintiff fails to explain why any clarification was supposedly needed. The record contained information, the ME reviewed that information, and he provided his expert opinion. Plaintiff fails to point to any evidence in the

record to show any flaw in the ME's opinion (beyond potentially that contained in the opinions properly discounted by the ALJ).

Second, Plaintiff contends that the ME admitted that 90% of Dr. Marr's notes were illegible.  As an initial matter, the ME was referring to records from Dr. Luis Chaves Villamil, M.D., not Dr. Marr.  *See* Tr. 23 (referring to Exhibits 3F and 7F, which contain records from Dr. Villamil).  Regardless, Plaintiff again fails to explain how the "illegible" comment has any bearing on the validity of the ME's opinions.  Quite simply, it does not.  Notably, it is clear from the ME's testimony and from my own independent review of Dr. Villamil's records that most of the substantive information is contained in the checklists completed by Dr. Villamil.  *See* Tr. 23, 310-25, 351-53.  The handwritten notes, though somewhat illegible, are relatively brief, and it is evident from the words that are legible that, aside from listing medications, the notes are primarily comprised of Plaintiff's reported subjective symptoms (the handwritten notes repeatedly begin by stating "she reports").  *See* Tr. 310-25, 351-53.   Again, the substantive observations from Dr. Villamil are contained in his checklists, and, as the ME testified, those checklists are consistent with "mild" depression.  Tr. 23.

Additionally, Plaintiff argues that the ME did not "meaningfully discuss" Dr. Layton-Tholl's opinion and findings and that the ME was overly dismissive of Ms. Eagle's opinion. Ultimately, Plaintiff argues that it was improper for the ALJ to provide greater weight to the ME's opinion than those of Plaintiff's treating sources.   However, as discussed above, the ALJ appropriately discounted the opinions of Dr. Layton-Tholl and Ms. Eagle based on good cause. As such, the ALJ's decision to give more weight to the ME's opinion, an opinion the ME explained with specific reasons and one that was consistent with objective medical evidence, was supported by substantial evidence.  *See Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 833 (11th

Cir. 2017) ("Substantial evidence also supports the administrative law judge's decision to assign more weight to the non-examining physician's opinion. Although the opinion of an examining physician is ordinarily entitled to greater weight than the opinion of a non-examining physician, the administrative law judge was free to reject the opinions of the examining physicians because they were not supported by the record. The non-examining physician also explained his conclusion about Huntley's residual functional capacity with specific reasons, and his opinion was consistent with the treatment records." (internal citation omitted)).

<u>**CONCLUSION**</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 16] and **GRANT** Defendant's Motion [DE 17].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 14th day of May 2021.

**Jared M. Strauss**
**United States Magistrate Judge**